**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**


**DERON MCCOY, JR.,**

       **Plaintiff,**

   v.            **CASE NO. 16-3239-SAC**

**KANSAS DEPARTMENT OF
CORRECTIONS, et al.,**

       **Defendants.**



**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' motion to dismiss (Doc. 26). Plaintiff filed a timely response (Doc. 29). For the reasons described herein, Defendants' motion to dismiss is granted.

### I. Complaint

Plaintiff alleges that his Eighth Amendment rights were violated when members of the Special Operations Response Team ("SORT") used excessive force against him during a shakedown of his cell at the Lansing Correctional Facility ("LCF") on January 21, 2016.

According to Plaintiff, he was lying on his bed in his cell resting with the lights out. Doc. 1 at 2. Defendant Acker walked past his cell, roused Plaintiff, and asked him to move the curtain over the front of his cell down so his cell was more visible to guards. Doc. 1 at 2. Mr. McCoy got up and moved the curtain. Doc. 1 at 2, 4. Approximately five minutes later, he heard his cell door open and saw figures entering but could not tell who they were in the darkness. Doc. 1 at 4. When

the light came on, the first thing he noticed was "a hand with a[n] object in it coming at me." Doc. 1 at 4. He got up off the bed and saw the hand with the object moving toward him in an upward thrusting motion. It appeared to Mr. McCoy that the person intended to stab him with the object. He instinctively grabbed the object without making any contact with the person holding it and threw the object out of the immediate vicinity.[1]  *Id.*

At that point, Plaintiff saw that Defendant Mosher had been holding the object and that Defendants McCurrie and Acker were with him. *Id.* Mr. McCoy provides two different accounts of what happened next. In the complaint, he asserts that once he was able to identify the people who entered his cell, he submitted to their order to get on the ground and put his hands behind his back. *Id.* at 5. In his grievance submitted to the Secretary of Corrections attached as an exhibit to the complaint, Mr. McCoy states that as he grabbed the object and threw it away, Defendants McCurrie, Acker, and Mosher grabbed him and attempted to throw him to the ground. Doc. 1-1 at 7. He claims he "passively submitted to their attempts." *Id.* While Plaintiff was lying face down on the ground, he felt a blow to jaw and his forehead struck the cement floor of the cell. He felt legs wrap around his neck, and he felt his arms being pushed up at an unnatural angle causing him "extreme pain." Doc. 1 at 5. Plaintiff heard Defendant McCurrie say, "Just break it," referring to Plaintiff's arms or wrist and realized Defendant McCurrie was the person applying the leg lock chokehold. *Id.* Plaintiff "briefly lost consciousness." Doc. 1-1 at 7. When he regained consciousness, he was standing with his arms handcuffed behind him with Defendant McCurrie in front of him and Defendants Mosher and Acker behind holding his arms. *Id.*

---

[1]  Plaintiff does not state in the body of the complaint what the object was, but in an exhibit attached to his complaint, it is described as a homemade smoking device Defendant Mosher picked up upon entering Plaintiff's cell. Doc. 1-1 at 4.

Mr. McCoy was then taken to the LCF medical clinic for evaluation and moved to restrictive housing.  Doc. 1 at 5-6.  He states medical staff directed him to take Ibuprofen and Tylenol which had already been issued to him.  Doc. 29-1 at 4.  He alleges he suffered injury to a previously injured shoulder (Doc. 1 at 8), had a knot and bruising on his forehead, and cuts and marks on his neck and wrists.  *Id.* at 6.

Count I alleges that three of the defendants violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment by using excessive force against him.  It asserts Defendants Mosher, Acker, and McCurrie acted "intentionally, willfully and maliciously" during the January 21, 2016, incident.

Count II alleges Defendants KDOC, Lucht, and Gift "intentionally, willfully and maliciously" violated Plaintiff's due process rights under the Fourteenth Amendment by "developing a culture or a custom of allowing and directing SORT members to assault and batter inmates" and by failing to "train, supervise, and discipline officers."

Count III brings a state law assault and battery claim against Defendants Acker, Mosher, and McCurrie.

## II.    Motion to Dismiss

Defendants argue that Mr. McCoy's complaint must be dismissed because he did not exhaust his administrative remedies as required by the Prison Litigation Reform Act prior to bringing suit under § 1983.  Defendants assert Plaintiff did not follow the grievance procedure mandated by state regulation and thus did not meet the PLRA's exhaustion requirement.

Defendants also argue they are entitled to official immunity under the Eleventh Amendment, as well as qualified immunity because Plaintiff failed to show his constitutional rights were violated.  Finally, Defendants assert Count III of Plaintiff's complaint is subject to dismissal

because it was filed outside the statute of limitations and because of futility and pendent jurisdiction.

### III.    Standard

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint where the facts alleged fail to state a claim to relief "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. All well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to the plaintiff for purposes of determining whether the complaint states a plausible claim for relief. *Id.*; *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). The Court's job is to assess whether the plaintiff's complaint, along with any attached exhibits, is legally sufficient to state a claim for which relief may be granted. *Smith*, 561 F.2d at 1098.

In their motion to dismiss, Defendants refer to the *Martinez* report ordered by the Court. However, for purposes of a motion to dismiss, any factual allegations contained in the *Martinez* report that conflict with Plaintiff's factual allegations cannot be considered by the Court.

### IV.    Discussion

#### A. Exhaustion of Administrative Remedies

Under 42 U.S.C. § 1997e(a), a prisoner must exhaust his administrative remedies prior to filing a lawsuit in federal court regarding prison conditions. *Id*. Section 1997e(a) expressly provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

*Id.* This exhaustion requirement "is mandatory, and the district court [is] not authorized to dispense with it." *Beaudry v. Corrections Corp. of Am.*, 331 F.3d 1164, 1167 n. 5 (10th Cir. 2003), *cert. denied*, 540 U.S. 1118 (2004); *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010). To satisfy this requirement, a prisoner must fully comply with the institution's grievance procedures. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90 (2006); *Little,* 607 F.3d at 1249. "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim. . . ." *Little,* 607 F.3d at 1249 (citing *Jernigan v. Stuchell,* 304 F.3d 1030, 1032 (10th Cir. 2002)).

The defendant bears the burden of raising exhaustion in its responsive pleadings as an affirmative defense. *Freeman v. Watkins,* 479 F.3d 1257, 1260 (10th Cir. 2007). The defendant also has the burden of proving non-exhaustion. *Roberts v. Barreras*, 484 F.3d 1236, 1240-41 (10th Cir. 2007). In addition, in determining whether to grant a motion to dismiss, a court may only consider the materials in the pleadings and must accept all of the plaintiff's allegations as true. *Russell v. Lincoln*, 267 F. App'x 785, 787 (10th Cir. 2008) (citing *Alvarado v. KOB-TV, L.L.C.,* 493 F.3d 1210, 1215 (10th Cir. 2007)).

Plaintiff claims he submitted a grievance regarding the incident to his unit team on February 8, 2016. Doc. 1 at 12. He also claims that on the same date he submitted a Form 9 requesting any camera footage of the incident. *Id.* at 12-13. He states he never received a response to his excessive force grievance, but did receive a response on February 21, 2016, to his request for camera footage. Doc. 29-1 at 9-10. Mr. McCoy claims he submitted a grievance to the warden on April 11, 2016, to which he received no response. Doc. 29-1 at 4, 10. He then sent a grievance to the Secretary of Corrections on June 9, 2016. Doc. 1 at 13; Doc. 29-1 at 10. The Secretary forwarded the grievance to the warden, who responded on July 8, 2016. Doc. 29-1 at 10. Mr.

McCoy sent an appeal of the warden's response to the Secretary on July 14, 2016.  Doc. 29-1 at 11.

The required prisoner grievance procedure in Kansas is found at K.A.R. § 44-15-102. K.A.R. § 44-15-102 provides that a prisoner must first submit his grievance to his unit team. K.A.R. § 44-15-102(a).  If he either does not receive a satisfactory response or does not receive any response within 10 working days, he may submit his grievance to the warden.  K.A.R. § 44-15-102(a)(2) and (b).  Again, if the prisoner does not receive a satisfactory response from the warden or if the warden does not respond within 10 working days, the inmate may send his grievance to the secretary of corrections.  K.A.R. § 44-15-102(b)(3)(A)(ii); § 44-15-102 (b)(3)(G); § 44-15-102 (c).  The secretary of corrections may send the grievance back to the warden if the warden never responded.  K.A.R. § 44-15-102(c)(4).

Defendants argue Mr. McCoy failed to exhaust because he sent his grievance to the secretary of corrections without first receiving a response from the warden and because once the warden responded, Plaintiff failed to appeal that response to the secretary.  However, Plaintiff claims he submitted a grievance to the warden on April 11, 2016, and had received no response by June 9, 2016, when he sent his grievance to the secretary of corrections.  He further alleges that once the warden provided a response on July 8, 2016, he appealed that response to the secretary on July 14.  Accepting Plaintiff's allegations as true as the Court is required to do in the context of a motion to dismiss, the Court cannot find that Plaintiff failed to exhaust his administrative remedies.

### B. Eleventh Amendment Immunity

As the Court previously noted, the Kansas Department of Corrections (KDOC) is not a proper party as it is a state agency entitled to Eleventh Amendment immunity and is not a "person"

subject to suit under § 1983.  *See Blackburn v. Dep't of Corr.*, 172 F.3d 62, *1 (Table) (10th Cir. 1999) (unpublished); *citing Buchwald v. University of New Mexico School of Medicine,* 159 F.3d 487, 494 n. 3 (10th Cir. 1998); and *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 70-71 (1989).   KDOC is dismissed from this action.

The Eleventh Amendment also bars Plaintiff's action against Defendants insofar as he is suing them in their official capacities.  *Allen v. Zaravas*, 474 F. App'x 741, 743-44 (10th Cir. 2012).  Plaintiff's official capacity claims are hereby dismissed.

## C.  Qualified Immunity

The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation and citation omitted).   To defeat a claim of qualified immunity, a plaintiff must show both: "(1) that the defendant's conduct violated a constitutional or statutory right, and (2) that the law governing the conduct was clearly established at the time of the alleged violation."  *Eaton v. Meneley*, 379 F.3d 949, 954 (10th Cir. 2004).  If a plaintiff fails to demonstrate either part of the inquiry, the defendant is entitled to qualified immunity.  *Id.*; *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).

The Court finds that Plaintiff has failed to state a claim that any defendant violated his constitutional rights.

### a.  Excessive force (Count I)

The core inquiry in an excessive force claim under the Eighth Amendment is whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).  In making this inquiry,

it is proper to evaluate several factors, including the need for application of force, the relationship between that need and the amount of force used, the extent of injury suffered, any efforts made to temper the severity of the response, and the threat reasonably perceived by the responsible prison officials. *Id.* at 7. The Court is directed to consider whether the use of force could plausibly have been thought necessary by the officials involved. *Id.* The "reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The Eighth Amendment analysis must take into consideration the highly-charged prison environment and accord wide-ranging deference to prison officials. *Hudson*, 503 U.S. at 6; *Sampley v. Ruettgers*, 704 F.2d 491, 495-96 (10th Cir. 1983).

Examining Mr. McCoy's own allegations from the perspective of the prison officers on the scene, they entered Plaintiff's cell, and he jumped out of bed and came at them. He grabbed something out of the hand of Defendant Mosher and threw it. Then, as they grabbed Mr. McCoy and were attempting to wrestle him to the ground, Plaintiff stopped resisting and submitted to the order to get on the ground and put his hands behind his back. Given the "highly-charged prison environment," the fact that Plaintiff had just behaved aggressively, and the fast-paced sequence of events alleged in the complaint, the Court finds it is not unreasonable that Defendants failed to immediately respond to Mr. McCoy's alleged shift from aggression to complete compliance and continued to respond to him as a threat.

Moreover, the amount of force used, as alleged by Plaintiff, was not excessive. "The Eighth Amendment does not require officers to use the minimum force necessary or even reasonably proportional force, but, rather, it requires only that they refrain from 'malicious and sadistic' violence, and that they direct their efforts to achieving a sincere penological end." *Pena*

*v. Greffet*, 108 F. Supp. 3d 1030, 1033 (D.N.M. 2015) (citing *Hudson*, 503 U.S. at 7).   Mr.

McCoy's allegations show that as soon as Defendants achieved the legitimate penological end of

restraining him, they stopped using force.   Further, while the seriousness of a prisoner's injury is

not determinative in the excessive force inquiry, the extent of injury may provide some indication

of the amount of force applied.  *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).   Mr. McCoy alleges he

suffered the aggravation of a pre-existing shoulder injury, bruises, and abrasions, and he briefly

lost consciousness.   These injuries are not indicative of a "malicious and sadistic" use of force.

Plaintiff states in his complaint that while Defendants were attempting to restrain him, he

heard Defendant McCurrie say, "Just break it," referring to Plaintiff's arm or wrist.   Normally, a

verbal threat or comment cannot rise to the level of a constitutional violation.  *Northington v.*

*Jackson,* 973 F.2d 1518, 1524 (10th Cir.1992) (verbal threats and harassment "are necessarily

excluded from the cruel and unusual punishment inquiry.")  However, here the threat was made in

the course of an incident involving the application of force.   In such instances, the alleged threat

is redressable under § 1983 if it "caused severe injuries, was grossly disproportionate to the need

for action under the circumstances and was inspired by malice rather than merely careless or

unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience."

*Turner v. Mull*, 784 F.3d 485, 492 (8th Cir. 2015) (quoting *Hopson v. Fredericksen,* 961 F.2d

1374, 1378 (8th Cir. 1992)).   Plaintiff alleges no facts demonstrating the threat was "inspired by

malice" or was anything more than an "unwise" comment made out of an "excess of zeal" in the

heat of the moment.  *See Hopson*, 961 F.2d at 1378.   Particularly given that Plaintiff's arm was

not broken, the threat to "just break it" provides little support for Plaintiff's claim that malicious

and sadistic intent inspired the use of force.

Plaintiff has failed to state a claim for violation of his Eighth Amendment rights. Therefore, Defendants Mosher, Acker, and McCurrie are entitled to qualified immunity on the claim in Count I.

### b. Due Process (Count II)

Plaintiff has also failed to state a claim for violation of his due process rights under the Fourteenth Amendment. As Defendants point out, the Fourteenth Amendment is inapplicable to excessive force claims brought by convicted prisoners. *Estate of Booker v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014). Consequently, Plaintiff has failed to state a claim upon which relief may be granted in Count II, and Defendants Lucht and Gift are entitled to qualified immunity on this claim.

If Plaintiff had instead brought an Eighth Amendment claim against Defendants Lucht and Gift, that claim would also fail because the Court has determined the force used was not excessive. In addition, Plaintiff has not included any facts showing Defendants Lucht and Gift were personally involved in the alleged constitutional violation. An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006); *Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir. 1997). Conclusory allegations of involvement are not sufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). "[T]he defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008).

Plaintiff claims Defendants Lucht and Gift "allowed or directed" the other defendants to batter him and failed to "train, supervise, and discipline officers."  Doc. 1 at 9.  He includes no allegations that these defendants were personally involved in the incident upon which his complaint is based.  Plaintiff's allegations about Defendants Lucht and Gift are conclusory and not sufficient to state a claim against them under § 1983.

### D.  State Law Assault and Battery (Count III)

Plaintiff suggests no theory under which the federal court would have jurisdiction over his state law claim in Count III.  His allegation of assault and battery pursuant to Kansas law is not a basis for relief in federal court under § 1983.  *See Malek v. Haun*, 26 F.3d 1013, 1016 (10th Cir. 1994).  The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claim because the constitutional claims over which the Court has original jurisdiction will be dismissed.  *See* 28 U.S.C. § 1367(c)(3).


**IT IS THEREFORE ORDERED** Defendants' motion to dismiss (Doc. 26) is **GRANTED**.  The action is hereby dismissed for failure to state a claim upon which relief may be granted.


**IT IS SO ORDERED.**

DATED:  This 10th day of April, 2018, at Topeka, Kansas.


**s/_Sam A. Crow_____**
**SAM A. CROW**
**U.S. Senior District Judge**

11